Devon **WALSH,** Plaintiff–Appellant,

v.

The **CITY OF NEW YORK** and Lee S. **Siegel,** Defendants–Appellees.

Docket No. 01–7204.

United States Court of Appeals, Second Circuit.

Feb. 12, 2002.

---

Leon Friedman; Richard Ware Levitt, Law Offices of Richard Ware Levitt, on the brief, New York, NY, for appellant.

Edward F.X. Hart; Leonard Koerner, on the brief, for Michael A. Cardozo, Corporation Counsel of the City of New York, New York, NY, for appellees.

Present LEVAL, CABRANES, and STRAUB, Circuit Judges.

## SUMMARY ORDER

**IN CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be and it hereby is **AFFIRMED** in part and **VACATED** in part and **REMANDED.**

Plaintiff Devon Walsh appeals from the grant of summary judgment in favor of the defendants by the United States District Court for the Southern District of New York (Naomi Reice Buchwald, *Judge*). Defendants are the City of New York and Lee S. Siegel, an attorney for the Mayor's Office of Downtown Enforcement. Walsh brought a Fourth Amendment claim under 42 U.S.C. § 1983 against the City and Siegel for the wrongful designation of her apartment as a place of prostitution that resulted in the apartment's seizure under court order.

The City moved for summary judgment under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for lack of a showing that the mistaken seizure was attributable to a City policy or practice. The district court granted the motion. Siegel moved for summary judgment on the basis of both absolute immunity, *see Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and qualified immunity, *see Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). The district court denied Siegel's motion to the extent it was founded on absolute immunity but granted it as a matter of qualified immunity. We affirm the judgment entered in favor of the City for the reasons given by the district court, but vacate the judgment dismissing Walsh's claims against Siegel.

The suit arose out of an investigation by the New York City Police Department's Manhattan South Vice Enforcement Squad into the operation of a house of prostitution under the name FOREVER YOURS in a four story building located at 332 East 22nd Street in Manhattan (the "Building").

The first and second floors of the Building are a single duplex apartment. On two separate occasions, officers of the Vice Squad, acting undercover, solicited prostitution in that duplex. The third floor includes two apartments # 3W, which was part of the FOREVER YOURS brothel, and # 3E, which was the plaintiff's residence. There is no interconnection between the two apartments. Officer Jagdeshwar Jaskaran of the Vice Squad solicited an act of prostitution in apartment # 3W. He knocked on the door of # 3W, offered money in exchange for sex to the woman who answered his knock, and promptly arrested her upon her agreement to accept money for sex.

Jaskaran and the other Vice Squad officers then presented the information of their solicitations of prostitution to attorney Siegel for him to prepare an application to the New York State Supreme Court under New York City's Nuisance Abatement Law, NYC Code § 7–707, *et seq.*, for the closing of the FOREVER YOURS house of prostitution.

In interviewing Jaskaran, Siegel learned that the third floor included a second apartment—# 3E—in addition to the apartment in which Jaskaran had solicited prostitution. Siegel questioned Jaskaran as to whether apartments # 3W and # 3E were interconnected, so as to determine whether his application should seek the seizure of the entire third floor or only # 3W. Jaskaran said he "believed" the two apartments were connected. Jaskaran told Siegel his reason for that belief. The evidence as to the reason he gave is conflicting: On Jaskaran's version— the version most favorable to the plaintiff, which we must accept in ruling on defendants' motion for summary judgment— Jaskaran said only that he had seen a door in apartment # 3W and "I told Mr. Siegel that I wasn't 100 percent sure but I believed that door went into [the other apartment]."

Armed with this information, Siegel prepared papers to be submitted to the Supreme Court seeking on behalf of the City an order of temporary closure of a public nuisance. The application sought the closure of the entire first, second, and third floors of the Building.

In support of the application, Siegel submitted his own affidavit in which, after "affirm[ing] the truth of the following," he asserted that "[t]he premises which are the subject of this action are located on the first, second, and third floors [of the Building]" and that "the subject premises are

being operated under the name FOREVER YOURS as a house of prostitution where acts of prostitution are performed." The affidavit asserts, making reference to the attached affidavits of the Vice Squad Officers, that undercover officers "participated in investigations of the subject premises to determine whether prostitution was taking place there," that "[o]n each day, an officer acting in an undercover capacity made an agreement to engage in sexual conduct ... in exchange for a fee," and that "[t]he facts set forth in the affidavits of the undercover police officers, described above, make it clear that the subject premises are being maintained as an establishment wherein the employees engage in sexual conduct in exchange for a fee."

Siegel's affidavit went on to assert, "Moreover, plaintiffs request closure of only those portions of the building ... which are occupied by the offending enterprise, FOREVER YOURS. Such an order would, therefore, be tailored to reach only the defendants' totally illegitimate enterprise; no innocent victims would be included within its scope."

The package of papers Siegel prepared in support of his application for the seizure of the entire third floor, as well as the first and second, included affidavits of Jaskaran and the other undercover officers who solicited acts of prostitution, as well as a memorandum of law prepared by Siegel. None of the papers revealed to the court that the third floor had two apartments.

On the basis of that application, the New York Supreme Court, New York County, granted the application ordering temporary seizure of the subject premises, which included the entire third floor. Armed with the court's order, Siegel accompanied officers of the South Vice Squad to the building and proceeded to seize the first and second floor duplex and the two apart-

ments on the third floor. Plaintiff Walsh was not home when the officers arrived. They broke down her front door and broke her bathroom door as well. When Walsh returned to her home at the end of her working day, she found the entrance to her apartment taped up with police papers forbidding entry and declaring it to be a place of prostitution. Later that very night, after the mistake was discovered, Siegel granted Walsh access to her apartment. Several days later, an amending order was prepared which formally removed Walsh's apartment from the closure order.

### Discussion

We conclude that the district court erred in granting Siegel's motion for summary judgment. Siegel's entitlement to a temporary order of closure as to apartment # 3E depended, under § 7–707, on his making a "clear and convincing" showing that a "public nuisance" was being maintained in that apartment. Based on the version of disputed facts most favorable to the plaintiff, Siegel either knew or should have known, after his interview of Officer Jaskaran, that what Jaskaran told him could not constitute clear and convincing evidence that prostitution was being conducted in apartment # 3E. Jaskaran had told Siegel that he had seen a door in apartment # 3W and "wasn't 100 percent sure but ... believed that door went into [apartment # 3E]." As a matter of law, Jaskaran's belief could not satisfy the "clear and convincing" requirement; Siegel had no reason to believe the door did not simply lead into a closet, a bathroom, or another room in # 3W.

In these circumstances, Siegel submitted to the court his personal affidavit in which he assured the court that "the subject premises [which included the entire third floor] are being operated ... as a house of prostitution." His affidavit also undertook

to assure the court that the application had been "tailored" to cover "only those portions of the building ... which are occupied by the offending enterprise, FOREVER YOURS."

Although we are confident that Siegel had no intent to mislead the court, his affidavit was seriously inaccurate in its presentation of the information presented to him relating to plaintiff Walsh's apartment.[1] On reading Siegel's affidavit objectively, the court would not have realized that the seizure order being sought applied to an apartment other than the one in which Jaskaran solicited prostitution. Nor would the inaccurate nature of Siegel's personal affidavit have been cured by a reading of the other supporting papers Siegel submitted because none of them revealed that the third floor included two apartments.

An attorney who has secured an order of seizure by the submission of his affidavit that inaccurately presents the information known to him cannot be entitled to judgment in his favor based on a "good-faith" immunity under *Harlow*, 457 U.S. at 807. The district court therefore should not have granted summary judgment in Siegel's favor based on the doctrine of good faith immunity.[2]

Nor was Siegel entitled to summary judgment based on the doctrine of absolute prosecutorial immunity. The Supreme Court made clear in *Kalina v. Fletcher*, 522 U.S. 118, 130–31, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) that when a prosecuting attorney undertakes to act not only in that role but also in the further role of a witness, her furnishing of false evidence is not protected by the shield of absolute immunity.

We therefore need not consider whether Siegel would have been entitled to absolute immunity if he had not given the court a personal affidavit, or if his affidavit had not subscribed to inaccurate assertions of fact.

The judgment of the district court is **AFFIRMED** in part, **VACATED** in part, and **REMANDED**.

---

1. This ruling is necessitated by the requirement that we accept the version of disputed facts most favorable to the plaintiff. If the jury at trial accepts Siegel's version of what Jaskaran told him, Siegel would then be entitled to judgment as a matter of law.

2. Our ruling applies only to Siegel's actions in obtaining the order of closure. We agree for the reasons given by the district court that Siegel's actions in enforcing the closure order were protected by qualified immunity.